**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

LAUREN LEE TRAVIS,

                Plaintiff,

vs.                                          Case No. 8:13-cv-1479-T-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Lauren Lee Travis ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "bipolar disorder, depression, anti social disorder, anxiety, o[bsessive ]c[ompulsive ]d[isorder], mood swings, panic attacks, hypothyroidism, asthma, trouble breathing, loss of focus, [and] loss of concentration[.]" Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed August 27, 2013, at 173 (capitalization omitted); see also Tr. at 181, 217. On September 22, 2010, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of June 12, 2010. Tr. at 154-74 (SSI), 178-82 (DIB).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed August 27, 2013; Reference Order (Doc. No. 15), entered September 10, 2013.

Plaintiff's applications were denied initially, see Tr. at 74-77, 84-85, 87-88, and were denied upon reconsideration, see Tr. at 78-81, 91-94.

An Administrative Law Judge ("ALJ") held a hearing on May 23, 2012, during which Plaintiff, who was represented by a non-attorney representative, and a vocational expert ("VE") testified. Tr. at 32-73.[2] At the time of the hearing, Plaintiff was twenty-nine (29) years old. Tr. at 37. On August 10, 2012, the ALJ issued a written Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 15-25. Plaintiff then submitted additional evidence to the Appeals Council in the form of a letter by her representative. Tr. at 4-8, 330-31 (duplicate of letter). On April 26, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. Plaintiff commenced this action on June 6, 2013 under 42 U.S.C. §§ 405(g) and 1383(c)(3), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff challenges the ALJ's Decision in five (5) ways. See Plaintiff's Memorandum–Social Security (Doc. No. 16; "Pl.'s Mem."), filed October 28, 2013, at 2. Plaintiff contends first that the ALJ erred in evaluating the opinions of two treating psychiatrists; second, that the ALJ erred in assigning great weight to the opinion of a non-examining state agency consultant; third, that even if ALJ did not err in assigning great weight to the non-examining consultant, the ALJ erred because he did not include all of the consultant's mental limitations in assessing Plaintiff's residual functional capacity ("RFC");

---

[2] The transcript of the hearing before the ALJ indicates Plaintiff was represented by an attorney, Tr. at 32, but the appointment of representative form indicates that Plaintiff's representative was "a non-attorney," Tr. at 82.

-2-

fourth, that the ALJ erred by not obtaining an expert opinion regarding whether Plaintiff met or equaled a Listing-level impairment; and fifth that the first four (4) errors identified translated into an RFC and a hypothetical question to the VE that were not based upon substantial evidence and resulted in a failure to establish other work that Plaintiff can perform at step five of the sequential evaluation process.  Pl.'s Br. at 2 (emphasis omitted). Defendant on January 23, 2014 filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") responding to Plaintiff's arguments.  With the Court's permission (Doc. Nos. 20, 21), on February 13, 2014, Plaintiff filed a Reply Memorandum–Social Security (Doc. No. 22; "Reply").  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d

---

[3]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-25. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 12, 2010, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: asthma; hypothyroidism; obesity; bipolar disorder; depress[ion]; and anxiety disorder." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work, as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except that [Plaintiff] must: avoid concentrated exposure to greater than moderate changes in temperatures, dust, fumes, gases, wetness, dampness, vibrations and other pollutants and irritants, such as strong perfumes and chemicals, as well as workplace hazards such as dangerous machinery, unprotected heights and uneven terrain; have no physical contact with [the] public, although there can be occasional, indirect, non-physical contact with the public; never engage in tandem/team work; have very little change in work structure; perform one or two step, routine, repetitive tasks; and engage in a low-stress work environment without production quotas or assembly line jobs.

Tr. at 19. At step four, the ALJ found Plaintiff "is unable to perform past relevant work . . . as a hair stylist . . . and a stock clerk[.]" Tr. at 23 (some emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age (twenty-seven (27) years old on the alleged disability date), education ("at least a high school education"), work experience, and RFC,

-4-

and determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 23 (emphasis and citation omitted).  Relying on the testimony of the VE, the ALJ identified as representative jobs "a garment bagger," "a garment folder," and "a marker II[.]" Tr. at 24.  The ALJ concluded that Plaintiff "ha[d] not been under a disability . . . from June 12, 2010, through the date of th[e D]ecision." Tr. at 25 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported

by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff challenges the ALJ's Decision in five (5) ways. The undersigned addresses all of the issues relating to the medical opinions together (Plaintiff's issues one (1), two (2), and three (3)), followed by the remaining issues in turn.

**A. Medical Opinions**

**1. Applicable Law**

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent

---

[5] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208,

1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**2. Opinions at Issue**

**a. Leo V. Yason, M.D. (treating psychiatrist).** Dr. Yason treated Plaintiff for bipolar disorder, type II, and other mental issues. His treatment notes in the administrative transcript span from December 2007 through December 2010. Tr. at 384-96, 429-42 (some duplicates). According to Plaintiff, she was treated by Dr. Yason until March 2012, when his practice was taken over by Shodhan Patel, M.D., P.A. See Pl.'s Mem. at 5; Tr. at 39.

In May 2011, Dr. Yason filled out a Mental RFC Questionnaire. Tr. at 449-53. He stated that Plaintiff's diagnoses were "Bipolar Disorder, depressed [(illegible)], [and] agoraphobia[.]" Tr. at 449. The limitations associated with these diagnoses started in November 2007. Tr. at 453. Dr. Yason wrote that Plaintiff suffered from "severe depression, mood swings, crying spells, [(illegible)] episodes, panic attacks, [and] insomnia." Tr. at 449. According to Dr. Yason, Plaintiff's prognosis was "guarded," and her response to treatment was "minimal." Tr. at 449. Dr. Yason also stated that the side effects of Plaintiff's medications were fatigue and weight gain. Tr. at 449.

Regarding Plaintiff's ability to perform work-related functions, Dr. Yason checked the box indicating Plaintiff was "[u]nable to meet competitive standards" with regard to twenty (20) out of twenty-five (25) areas of inquiry, including but not limited to remembering work-

like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; making simple work-related decisions; and responding appropriately to changes in a routine work setting. Tr. at 451-52. Dr. Yason noted that Plaintiff "has severe mood symptoms, poor concentration[, and] has failed attempts to hold [(illegible)] jobs." Tr. at 452. According to Dr. Yason, Plaintiff could be expected to miss more than four days of work per month as a result of her impairments. Tr. at 453.

**b. Shodhan Patel, M.D., P.A. (treating psychiatrist).** As previously stated, Dr. Patel took over Dr. Yason's practice in approximately March 2012. Dr. Patel treated/evaluated Plaintiff two times, on March 19, 2012 and on May 22, 2012, before filling out a Mental RFC Questionnaire on May 22, 2012. Tr. at 505-09. Dr. Patel had reviewed Dr. Yason's "data" prior to filling out the questionnaire. Tr. at 505. Dr. Patel's opinions on the questionnaire relating to Plaintiff's disorders and their effects on her ability to perform work are relatively consistent with Dr. Yason's opinions. Tr. at 505-09.

Regarding side effects of the medications, Dr. Patel stated they caused "sedation/fatigue/gastric/[(illegible)]." Tr. at 505. Dr. Patel also stated, among other things, that Plaintiff suffered from insomnia and that she tended to decompensate with minor stressors. Tr. at 505. According to Dr. Patel, Plaintiff was unable to meet competitive standards in eighteen (18) of twenty-five (25) areas of inquiry. Tr. at 507-08.

**c. Robert F. Schilling, Ph.D., P.A. and George Grubbs Psy.D. (non-examining psychologists).** On November 8, 2010, Dr. Schilling filled out a Psychiatric Review Technique, Tr. at 404-17, and a Mental RFC Assessment, Tr. at 418-20. According

to Dr. Schilling, Plaintiff suffers from "Bipolar Disorder, Depressed," Tr. at 407, and "Anxiety Disorder, NOS," Tr. at 409. As a result of the disorders, Plaintiff has mild limitations in daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. Tr. at 414. Plaintiff has not experienced any episodes of decompensation of extended duration. Tr. at 414.

In contrast to Drs. Yason and Patel's Mental RFC Assessments, Dr. Schilling opined on the Mental RFC Assessment that Plaintiff is not significantly limited in thirteen (13) out of twenty (20) areas of inquiry, and she is moderately limited in the remaining seven (7) areas. Tr. at 418-19. Dr. Schilling also elaborated in the narrative section:

> With the clinical data and functional deficits outined in the SSA-2506-BK in mind, the following represents [Plaintiff's] residual capacities in spite of psychological impairment(s). [Plaintiff's] ability to understand an[d] remember complex or detailed instructions is limited, however, [she] can be expected to understand, remember and carry out simple one and two-step instructions. Basic memory processes are intact. [She] can perform work in a stable environment. [She] may at times experience mild/moderate difficulties working within a work schedule and at a consistent pace. [She] would be able to maintain regular attendance and be punctual. Also, [Plaintiff] would not require special supervision in order to sustain a work routine but may have difficulties accepting criticism from a supervisor. [She] may have difficulties adapting to changes in the work setting. Due to the nature of [Plaintiff's] MDI(s) [her] abilities to socially interact are restricted. Thus, [she] should maintain limited exposure to the general public during episodes of exacerbated symptoms. [Plaintiff] is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from any impairments.
>
> [Plaintiff] retains the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at higher levels in spite of the moderate limitations noted above.
> . . .

Tr. at 420.

Then, on January 31, 2011, a second non-examining psychologist, Dr. Grubbs, reviewed the file and rendered an opinion. Tr. at 445. When Dr. Grubbs reviewed the file, it contained updated mental evidence that Dr. Schilling had not reviewed. Tr. at 445. Nevertheless, Dr. Grubbs affirmed that he agreed with the assessment of Dr. Schilling. Tr. at 445.[6]

### 3. Analysis of ALJ's Findings

Regarding the treating psychiatrists' respective mental opinions, the ALJ found as follows:

> In May 2011, Dr. Yason completed a mental [RFC] questionnaire for [Plaintiff]. Dr. Yason opined that due to [Plaintiff's] alleged mental impairments, she was mainly "unable to meet competitive standards" to do unskilled work and semiskilled and skilled work. He noted, however, that [Plaintiff's] aptitude and ability to do particular types of jobs were "limited but satisfactory" in adhering to basic standards of neatness and cleanliness. In May 2012, [Dr.] Patel [] completed a mental [RFC] questionnaire for [Plaintiff]. Dr. Patel noted that he initially evaluated [Plaintiff] two months prior, which shows that he was not as familiar with [Plaintiff's] mental history. Moreover, it appears that at the time of the evaluation for this statement, this was only Dr. Patel's second time seeing [Plaintiff].
>
> I afford very little weight to the medical opinion of Dr. Patel in that he evaluated [Plaintiff] only once before he made this assessment and opined that [Plaintiff] had severe psychological symptoms and/or the tendency to decompensate with minor stressors and noted that she would likely miss more than four days per month from school.[7]  While Dr. Patel reported that [Plaintiff] had side effects

---

[6]  Specifically, Dr. Grubbs stated:

I have reviewed all available MERs in file.  3341 indicated no worsening of MH symptomatology but did note upated MH Tx. Despite additional information provided from Yason MERs, CCC MERs, HCHD MERs, & self reports, I agree w/the PRTF/MRFC completed on 11/8/10 [by Dr. Schilling].

Tr. at 445.

[7]  It appears the ALJ mistakenly stated "school" instead of work. See Tr. at 509 (Dr. Patel indicating Plaintiff would likely miss more than four days per month of work).

> from the medications as well as disturbed sleep, Dr. Yason noted that [Plaintiff] had no side effects from the medication and slept well. Further, much of Dr. Patel's assessment was inconsistent with Dr. Yason's treatment notes, and the medical evidence of record is devoid of Dr. Patel's alleged first assessment of [Plaintiff]. Therefore, I also afford very little weight to the medical opinion of Dr. Yason in that his assessment was also inconsistent with his treatment notes as well as the longitudinal record. Neither medical source statement was properly supported by any related treatment notes.

Tr. at 22 (citations omitted). Regarding the non-examining psychologists' opinions, the ALJ found as follows:

> . . . I give significant weight to the medical opinion of the DDS medical examiners [(Drs. Shilling and Grubbs)] because these individuals considered the longitudinal record in assessing [Plaintiff's RFC] or non-severity of symptoms, which is consistent with the [RFC] set forth in th[e D]ecision.

Tr. at 23.

Plaintiff argues that the reasons articulated by the ALJ for discounting the treating psychologists' opinions are insufficient and are not supported by substantial evidence in the record. Pl.'s Mem. at 5-13; see also Reply. Plaintiff further asserts that the ALJ's reliance on the non-examining psychologists' opinions in lieu of the treating psychiatrists' opinions was inappropriate. Pl.'s Mem. at 13-14. Finally, even though the ALJ chose to rely on the non-examining psychologists' opinions, according to Plaintiff, he failed to include all of their assigned limitations. Id. at 15-16.

The undersigned finds that the ALJ articulated with sufficient specificity the reasons for discounting the treating psychiatrists' opinions, and those reasons are supported by substantial evidence in the record. The undersigned further finds no error in the ALJ's treatment of the non-examining psychologists' opinions. A more detailed discussion follows.

### a. Treating psychiatrists

In discounting Dr. Patel's opinion, the ALJ correctly observed that Dr. Patel had a very limited treatment history with Plaintiff prior to rendering the opinion.[8] Tr. at 22; see Tr. at 505.  It is true that Dr. Patel had reviewed Dr. Yason's notes prior to rendering his opinion, see Tr. at 505, but under the Regulations, the ALJ nevertheless was permitted to consider the length/frequency of Dr. Patel's examinations when assigning the appropriate weight to his opinion, see 20 C.F.R. § 404.1527(c).  The ALJ then pointed out a specific example of an inconsistency between Dr. Patel's opinion that Plaintiff suffers from a number of side effects and disturbed sleep and Dr. Yason's notes indicating that Plaintiff had no side effects and was sleeping well.  Tr. at 22; compare Tr. at 505 (Dr. Patel's opinion), with Tr. at 384, 386, 387, 388, 393, 394, 395.[9]  The ALJ also correctly stated that Dr. Patel's notes are not included in the administrative transcript.  Tr. at 22.

The ALJ then discussed Dr. Yason's opinion.  The ALJ discounted Dr. Yason's opinion because it was inconsistent with his own notes.  Tr. at 22; compare Tr. at 449-53 (Dr. Yason's opinion), with Tr. at 384-96, 430-42 (Dr. Yason's notes).  The ALJ concluded that neither doctor's opinion, therefore, "was properly supported by any related treatment notes." Tr. at 22 (citation omitted).

---

[8]  According to the questionnaire filled out by Dr. Patel, the first time he evaluated Plaintiff, and the only time he evaluated Plaintiff prior to the day he filled out the form, was on March 19, 2012. Tr. at 505. It does appear from the questionnaire that Dr. Patel also evaluated Plaintiff on the day he filled it out (May 22, 2012), see Tr. at 505, but none of Dr. Patel's evaluation notes are in the administrative transcript so it is not possible to tell the extent of that evaluation. At one point in the Decision, the ALJ observed that Dr. Patel had "see[n]" Plaintiff twice, but at another, the ALJ stated that Dr. Patel had "evaluated" her once. Tr. at 22. In any event, it appears the ALJ sufficiently considered the treatment history of Dr. Patel.

[9]  But see Tr. at 389, 390 (noting a temporary unrelated side effect of Wellbutrin).

-14-

In sum, upon review of the reasons provided by the ALJ and of the administrative transcript, the undersigned finds that the ALJ did not err in his handling of the treating psychiatrists' opinions. The ALJ provided sufficient reasons for discounting them, and those reasons are supported by substantial evidence.[10]

### b. Non-examining psychologists

Plaintiff argues that the ALJ's reliance on the non-examining psychologists' opinions was inappropriate because they did not review the opinions of the treating psychiatrists prior to offering their respective opinions. Pl.'s Mem. at 13-14. The non-examining psychologists did not review the opinions of the treating psychiatrists because the treating opinions were authored after the non-examining opinions. Compare Tr. at 449-53 (Dr. Yason's treating opinion authored in May 2011), and Tr. at 505-09 (Dr. Patel's treating opinion authored in May 2012), with Tr. at 404-20 (Dr. Schilling's non-examining opinion authored in November 2010), and Tr. at 445 (Dr. Grubbs' non-examining opinion authored in January 2011). The non-examining psychologists did, however, collectively review all of the mental treatment notes in the file. For this reason, the Court is not persuaded by Plaintiff's argument. In sum, the ALJ appropriately relied on the non-examining medical sources' opinions that are consistent with the evidence while rejecting the treating sources'

---

[10] Within her argument relating to the treating psychiatrists, Plaintiff contends the ALJ should have ordered a consultative examination in the face of conflicting opinions of the treating and non-examining sources. Pl.'s Mem. at 13. "It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he [or she] is disabled, and, consequently, he [or she] is responsible for producing evidence in support of his [or her] claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty, 245 F.3d at 1281). Here, the ALJ had before him sufficient evidence to make an informed decision, so a consultative examination was not necessary.

-15-

opinions that are not. See Oldham, 660 F.2d at 1084.

Plaintiff further argues that the ALJ failed to account for all of the non-examining psychologists' functional limitations, even though he assigned significant weight to their opinions. Pl.'s Mem. at 15-16. Plaintiff correctly points out that even though the treating psychologists assigned moderate limitations in social functioning and in maintaining concentration, persistence, or pace, the ALJ assigned no limitations in social functioning and mild limitations in maintaining concentration, persistence, or pace. Id. at 15; compare Tr. at 18 (ALJ), with Tr. at 414, 445 (non-examining psychologists).

Even if the ALJ erred in his assignment of the functional limitations, the error is harmless because he sufficiently accounted for the non-examining psychologists' assigned work-related limitations. As the ALJ correctly noted, the functional limitations at issue "are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. at 19. When itemizing the claimant's various functions in assessing the RFC at steps four and five of the sequential evaluation process, however, "[n]onexertional capacity must be expressed in terms of work-related functions." SSR 96-8p, 1996 WL 374184, at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c), 416.945(c). The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional

limitation." 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). Here, the ALJ sufficiently accounted for all of the assigned work-related mental limitations by incorporating them in the RFC. Compare Tr. at 19 (RFC), with Tr. at 418-19 (work-related mental limitations assigned by non-examining psychologist). For this reason, any inconsistency in the earlier steps of the sequential evaluation is of no moment.

## B.  Remaining Issues

Plaintiff further contends that the ALJ erred in "fail[ing] to consider, based upon an enhanced record, that [Plaintiff's] mental health conditions could meet or equal a 'listed impairment,' and, in particular, his failure to obtain medical expert testimony to address this issue, is clear error requiring remand." Pl.'s Mem. at 18.

At step three of the sequential evaluation process, the burden rests on the claimant to prove the existence of a listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

As Plaintiff recognizes, the ALJ only would have been required to obtain an updated medical opinion from an expert regarding whether a listing was met if additional medical evidence had been received that could have changed the non-examining psychologists findings that no listings were met or equaled. See Pl.'s Mem. at 18 (citing SSR 96-6p, 1996

-17-

WL 374180).  Only the opinions of Drs. Yates and Patel were received after the non-examining psychologists rendered their opinions that Plaintiff did not meet or equal a listing. These opinions do not address the listings, and in any event, they were properly discounted by the ALJ for the reasons explained above.  Accordingly, the ALJ was not required to obtain a medical expert's opinion regarding the listings.

Finally, Plaintiff argues the ALJ erred in posing the hypothetical to the VE because the hypothetical did not include all of the limitations assigned by her treating psychiatrists and the non-examining psychologists.  Pl.'s Mem. at 18-20.  Plaintiff's argument in this regard is dependent upon her previous arguments that the Court has rejected.  For the reasons articulated above, the ALJ did not err in posing the hypothetical to the VE.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence.  Accordingly, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 11, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record